# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIAME CALDERON, an individual; RC, a minor child; MC, a minor child; MC, a minor child,<br><br>Plaintiffs,<br><br>v.<br><br>TULARE REGIONAL MEDICAL CENTER and the UNITED STATES OF AMERICA,<br><br>Defendants. | Case No. 1:17-cv-0040-BAM<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT<br><br>(Doc. 41).<br><br>ORDER SETTING STATUS CONFERENCE<br><br>Date: October 22, 2018<br>Time: 9:30 a.m.<br>Dept: Ctrm 8(BAM) |

## I.      INTRODUCTION

Before the Court is Plaintiffs' Motion for Leave to file a First Amended Complaint against Defendants Tulare Regional Medical Center and the United States of America pursuant to Federal Rule of Civil Procedure 15. (Doc. 41). By amendment, Plaintiffs seeks to modify their factual allegations and add Luis Sanchez, D.O. as a defendant. On August 17, 2018, Defendant United States filed an opposition to the motion. (Doc. 44). On August 24, 2018, Plaintiffs filed a reply. (Doc. 46). Defendant Tulare Regional Medical Center ("TRMC") did not file a timely opposition to the motion. The Court heard oral argument on the matter on September 14, 2018. (Doc. 48). Counsel Raymond Chandler appeared by telephone on behalf of Plaintiffs. Counsel Jeffrey Lodge

1

appeared in person on behalf of Defendant the United States.  Counsel Carol O'Neil appeared by telephone on behalf of TRMC.  Having considered the moving papers, opposition, reply, and the Court's file, Plaintiffs' Motion to Amend is **GRANTED.**

**II.    BACKGROUND**

On October 13, 2015, decedent Ana Calderon ("Ana"), gave birth to her third child at Tulare Regional Medical Center.  Dr. Adanna Ikedilo performed the delivery.  The following day, on October 14, 2015, Ana underwent a tubal ligation procedure also performed by Dr. Ikedilo.  According to Plaintiffs' complaint, within 15 minutes after Dr. Ikedilo completed the tubal ligation, Ana's vital signs began to crash and her blood pressure fell.  Ana remained under anesthesia and she suffered a series of cardiac arrests before she ultimately died on October 17, 2015.

On April 4, 2016, Plaintiff Jiame Calderon, along with his children, filed an administrative claim against the United States based upon the treatment provided by Dr. Ikedilo as a deemed employee of the Public Health Service.

On January 11, 2017, Plaintiffs filed their initial complaint in this Court naming both Dr. Ikedilo and TRMC as Defendants.  Plaintiffs allege that Dr. Ikedilo and TRMC committed medical malpractice on October 14, 2015, by negligently dissecting an artery during Ana's tubal ligation surgery and by not performing a timely and proper exploratory laparotomy to repair the artery.

On March 17, 2017, the United States filed a Notice of Substitution as well as a supporting certificate of scope of employment indicating that under 28 U.S.C. § 2679, the United States is the proper defendant in this action in place of Adanna Ikedilo, M.D. (Doc. 9). The Court subsequently terminated Dr. Ikedilo as a defendant in this case.

On April 17, 2018, the Court set a case management schedule. (Doc. 18).  However, on September 30, 2017, the case was stayed by TRMC's chapter 9 bankruptcy and the Court vacated the scheduling order. (Doc. 20). The bankruptcy stay was lifted on February 15, 2018. (Doc. 29).

On March 19, 2018, the Court held a status conference where the parties expressed a desire to conduct preliminary discovery before scheduling pretrial and trial deadlines.  (Doc. 34). On June 11, 2018, the parties filed a status report indicating that they had completed fact discovery and asked that the Court advance the scheduling conference to a sooner date in order to set pretrial and

trial deadlines. (Doc. 36).

On July 3, 2018, the Court issued a scheduling order setting the deadline for parties to file stipulated amendments or a motion to amend by July 30, 2018. (Doc. 40).

On July 27, 2018, Plaintiffs filed the instant motion for leave to file an amended complaint. Through their proposed amendment, Plaintiffs seek to add anesthesiologist Dr. Luis Sanchez as a defendant in this case. Plaintiffs allege that Dr. Sanchez acted as an anesthesiologist in the tubal ligation surgery performed on Ana Calderon. Plaintiffs contend that based on testimony from Dr. Ikedilo's deposition, amendment is necessary to add Dr. Sanchez as a party because his conduct fell below the applicable standard of care, which was a substantial factor in causing the death of Ana Calderon.

**III.   LEGAL STANDARD**

Under Federal Rules of Civil Procedure ("Rule") 15, a party may amend a pleading once as a matter of course within 21 days of service. "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although leave to amend should be "freely given when justice so requires," *id*., granting or denying leave to amend a complaint is in the discretion of the Court. *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir.1996). "In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.1981). Leave to amend a pleading should not be granted where "amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Madeja v. Olympic Packers*, 310 F.3d 628, 636 (9th Cir. 2002) (*citing Yakima Indian Nation v. Wash. Dep't of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999)).

**IV.   DISCUSSION**

As an initial matter, Defendant argues that the Court should apply Rule 16's more stringent good cause standard instead of applying the liberal amendment standard under Rule 15 when considering Plaintiffs' motion to amend. (Doc. 44 at 5). Defendant contends that "when a party seeks to amend its complaint after a Rule 16 scheduling order has been issued, the party's ability

to amend his complaint is governed by Rule 16(b)." (Doc. 44 at 5).

Defendant is incorrect. The "good cause" standard under Rule 16 applies if a party moves for leave to amend the pleadings after the time limit allowed by the scheduling order. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000)  On the other hand, if a party seeks to file an amended pleading before the allowed time limit, only the requirements set forth in Rule 15 apply. The scheduling order issued on July 2, 2018, requires that motions to amend be filed by July 30, 2018. (Doc. 40). Plaintiffs filed their motion to amend on July 27, 2018—three days before the amendment deadline set in the scheduling order. Thus, for the instant motion, Rule 15(a) is the relevant governing standard for granting leave to amend.

Under Rule 15(a), there are several factors a court may consider in deciding whether to grant leave to amend a pleading: (1) whether there have been prior amendments, (2) undue delay, (3) bad faith, (4) futility of amendment, and (5) prejudice to the opposing party ("*Foman* factors"). *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Loehr v. Ventura County Cmty. Coll. Dist.*, 743 F.2d 1310, 1319 (9th Cir. 1984). These factors are not of equal weight; prejudice has long been held to be the most crucial factor in determining whether to grant leave to amend. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight").

Under a Rule 15 analysis, Defendant urges this Court to deny Plaintiffs' motion based on all of the *Foman* factors. First, Defendant argues that Plaintiffs' attempted amendment comes long after Plaintiffs knew sufficient facts to name Dr. Sanchez as a Defendant.  Second, Defendant contends that the amendment is brought in bad faith because Plaintiffs' claims against Dr. Sanchez are "quite dubious." Third, Defendant argues that amendment is futile because there is no evidence to suggest that Dr. Sanchez made any errors or omissions. Finally, given that fact discovery is closed, it would be inherently prejudicial to bring a new defendant into this action almost two years after the original complaint was filed. (Doc. 44).  The Court reviews each argument in turn.

**A.     Prior Amendments**

The Court's discretion to deny an amendment is "particularly broad" where a pleading has

been amended previously. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir.1990); *Fidelity Fin. Corp. v. Fed. Home Loan Bank*, 79 F.3d 1432, 1438 (9th Cir.1986). Plaintiffs have not previously amended their complaint in this action. Therefore, this factor does not weigh against amendment.

**B. Undue Delay**

Undue delay is "delay that prejudices the nonmoving party or imposes unwarranted burdens up on the court." *San Diego Comic Convention v. Dan Farr Prods.*, 2017 WL 3269202, at *5 (S.D. Cal. Aug. 1, 2017). Delay alone is not sufficient to deny leave to amend but plays a factor in the analysis. *Morongo Band of Mission Indians v. Rose*, 839 F.2d 1074, 1079 (9th Cir. 1990). Relevant to this inquiry is whether the new claim would "greatly alter[ ] the nature of the litigation." *Morongo Band*, 839 F.2d at 1079. The passage of time is not, in and of itself, undue delay, instead the relevant inquiry is "[w]here the party seeking amendment knows or should know of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend may be denied." *Jordan v. Cnty. of L.A.*, 669 F.2d 1311, 1324 (9th Cir. 1982) *vacated on other grounds*, *Cnty. of L.A. v. Jordan*, 459 U.S. 810 (1982).

Defendant argues that Plaintiffs' motion is untimely because Plaintiffs knew sufficient facts to name Dr. Sanchez as a defendant at the time they filed the original complaint. Plaintiffs thus unnecessarily waited up to eighteen months to add Dr. Sanchez as a Defendant. This delay, Defendant contends, is particularly egregious given Plaintiffs repeated decision to forgo written discovery and wait until the last minute to depose Dr. Ikedilo. (Doc. 44 at 9). Defendant explains that Plaintiffs conducted minimal written discovery and initially declined to take Dr. Ikedilo's deposition or "any discovery other than expert depos." (Doc. 44 at 3). However, hours after the scheduling conference, Plaintiffs' counsel changed course and requested the depositions of Dr. Ikedilo and Dr. Sanchez. (Doc. 40).

In response, Plaintiffs do not deny that they have known about Dr. Sanchez's involvement since the inception of this case. However, they argue that there is no delay here because the need to add Dr. Sanchez as a defendant did not arise until during Dr. Ikedilo's July 19, 2018, deposition where she implied that Dr. Sanchez failed to perform proper medical standards in advising Dr.

5

Ikedilo on Ana's vital signs. (Doc. 41 at 11). Plaintiffs argue that as soon as they became aware of the need to add Dr. Sanchez, they filed the instant motion to amend eight days later.

Defendant is correct with respect to the unnecessary delay in this case. First, even a cursory review of the initial complaint demonstrates that Plaintiffs understood early on this case that several omissions occurred between the completion of Ms. Calderon's tubal ligation and the time Dr. Ikedilo returned to the operating room to find the source of her bleeding. Plaintiffs' Compl. at ¶ 17-22. Plaintiffs' complaint alleges that Dr. Ikedilo left the operating room immediately after completing the tubal ligation. *Id.* a ¶ 17. Within 15 minutes after that surgery, Ana's vital signs began to crash. Plaintiffs allege that "despite the obvious signs of her internal bleeding," exploratory surgery did not begin until approximately an hour later. *Id.* at ¶¶ 21-22. According to the Plaintiffs, these events all occurred while Ana was still under the anesthesia initially administered by Dr. Sanchez. It appears that, at the very least, Plaintiffs had some idea that Dr. Sanchez may arguably bear some possible responsibility in failing to monitor Ana while she was still under anesthesia after surgery.

Second, even accepting Plaintiffs version of events—that there was no way to know of Dr. Sanchez's potential liability until after Dr. Ikedilo's deposition—this late discovery is of Plaintiffs own making. Plaintiffs pursued aggressive fact discovery deadlines and set out to engage in only minimal discovery. For this, Plaintiffs have no explanation. Instead, they rely on the Dr. Ikedilo's deposition as the sole reason to add Dr. Sanchez as a Plaintiff. Plaintiffs have therefore failed to show that they could not have learned this same information earlier had they availed themselves of a more appropriate discovery procedure.

Ultimately, either Plaintiffs knew very early on that Dr. Sanchez may be a proper defendant in this case and failed to properly add him or Plaintiffs unnecessarily delayed amendment by waiting to obtain this information by pursing their unusual handling of discovery. Accordingly, the undue delay factor weighs in Defendant's favor. However, delay alone is not sufficient to deny the motion, *see Morongo Band*, 839 F.2d at 1079. Therefore, the Court turns to the remaining *Foman* factors.

///

### C. Bad Faith and Futility

Defendant's arguments with respect to bad faith and futility are related. Defendant argues that the decision to add Dr. Sanchez as a defendant could not be in good faith because Plaintiffs concede in their moving papers that (1) "there is nothing in the medical records to indicate that Dr. Sanchez made any errors or omissions" and (2) the claims concerning Dr. Sanchez seem "quite dubious." (Doc. 41 at 6, 13). Likewise, because Plaintiffs cannot allege genuine facts to support claims against Dr. Sanchez, the amendment is futile. Plaintiffs responds that the allegation that Dr. Sanchez failed to inform Dr. Ikedilo about the significant changes in Ana's vital signs constitutes a sufficient good faith basis upon which to bring a claim for medical negligence.

In the context of a motion to amend under Rule 15, "bad faith" generally refers to efforts to amend the pleadings late in the litigation in order to obtain an unfair tactical advantage. *E.g. Bonin v. Calderon*, 59 F.3d 815, 846 (9th Cir. 1995) (bad faith shown where petitioner sought leave to amend late in the litigation after suffering an adverse ruling); *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) (amendment disallowed where the delay in amendment was a tactical choice brought specifically to avoid the possibility of an adverse summary judgment ruling).

Contrary to Defendant's arguments, the record does not support a finding of bad faith. There is nothing to suggest that Plaintiffs seek to add Dr. Sanchez to gain a tactical advantage or to advance any other improper motive. While both parties appear to agree that this case is about blood loss due to a cut artery—allegations seemingly unrelated to Dr. Sanchez's administration of anesthesia—Plaintiffs seek to add Dr. Sanchez on the theory that he had a duty to monitor Ana and notify Dr. Ikedilo regarding any significant changes to Ana's vital signs. According to Plaintiffs, if Dr. Sanchez failed to report these changes he may be negligent because those changes are an indication of bleeding. While permitting Plaintiffs to add Dr. Sanchez at this stage may prolong or delay litigation, there is no evidence that Plaintiffs brought the motion for this purpose.

Moreover, to the extent that Defendant alleges that the amendment would be futile based on the limited factual allegations supporting Plaintiffs' proposed claims against Dr. Sanchez, the Court declines to rule on this challenge in the context of a motion for leave to amend. *See Netbula,*

*LLC v. Distinct Corp.*, 212 F.R.D. 534 (N.D. Cal. 2003) (denial of leave to amend on futility grounds is "rare" because "[o]rdinarily, courts will defer considerations of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed"). Plaintiffs' claims are not so facially frivolous that the Court will conclude it would be futile to permit Plaintiffs to assert them. Therefore, Defendant has not satisfied its burden of establishing bad faith or futility.

### C. Undue Prejudice

Prejudice to the opposing party is the most important factor in deciding whether leave to amend should be granted. *Eminence Capital, LLC*, 316 F.3d at 1052. "'Undue prejudice' means substantial prejudice or substantial negative effect." *SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1085 (S.D. Cal. 2002) (*quoting Morongo Band*, 893 F.2d 1074, 1079 (9th Cir. 1990)). The Ninth Circuit has found such "substantial prejudice where the claims sought to be added 'would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense.'" *Id.* "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). Prejudice is generally mitigated where the case is still in the discovery stage, no trial date is pending and no pretrial conference has occurred. *See DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 187-88 (9th Cir. 1987).

Defendant argues that amendment would be prejudicial given that fact discovery is closed and the need to reopen discovery would delay proceedings in this already two-year old case. Defendant further contends that it has already taken Plaintiff's deposition once and amendment would require an additional deposition. Amendment, according to Defendant, would also slow the progress of this case towards trial as adding an additional party would require service of the amended complaint and additional motion practice.

Although Defendant may suffer some prejudice if Plaintiffs amend the complaint, the Court cannot conclude that this prejudice would be undue. While fact discovery closed three weeks after Plaintiffs filed the instant motion, expert discovery is ongoing for another three months. (Doc. 40).

The Court can adjust the schedule as necessary while potentially still maintaining the integrity of the trial date. It is not uncommon for fact discovery and expert discovery to proceed simultaneously and there is no reason to avoid that procedure in this case. Further, the February 11, 2019, dispositive motion deadline is still many months away and the parties have an ample amount of time before the July 29, 2019, trial date. Defendant is correct that the parties will need to await service and a responsive pleading from Dr. Sanchez, but that delay is likely limited given that Dr. Sanchez is already represented by counsel and he has been made aware that he may be added as a defendant. Declaration of Raymond Chandler ("Chandler Decl.") ¶ 3, (Doc. 42 at 2).

The amendment will alter the nature of the litigation, but not significantly. All claims relate to the events in the operating room during a specific time period. Indeed, prior to the instant motion, Plaintiffs contacted counsel for Dr. Sanchez to schedule his deposition about the events. *Id.* Dr. Sanchez's attorney agreed to schedule the deposition, however the deposition did not proceed because Plaintiffs informed his attorney that they were intending to file the underlying motion to add Dr. Sanchez as a defendant. *Id.* Defendant was therefore aware that whether Dr. Sanchez was a party or not, his deposition was likely to go forward.

The Court acknowledges Defendant's contention that amendment would lead to extended discovery, which would in turn require more delay in this case. Although this is Defendant's strongest argument, it does not carry enough weight to compel denial of the motion for leave to amend. *See e.g., Genentech, Inc. v. Abbott Labs*., 127 F.R.D. 529 (N.D. Cal. 1989) (fact that allowing plaintiff to amend pleading might require defendant to depose numerous witnesses across country and might necessitate additional document searches and written discovery resulting in delay does not constitute undue prejudice to defendant warranting denial of plaintiff's motion to amend.). This is especially true given the type of additional discovery required here. Plaintiffs request a limited extension of the fact discovery deadline in order to take Dr. Sanchez's deposition; a proceeding that was already in the works before the proposed amendment. Plaintiffs further point out that the deposition is unlikely to be burdensome. They note that Dr. Ikedilo's deposition took only two hours to complete. (Doc. 41 at 11). Thus, this does not appear to be the type of wholesale discovery that would typically require substantial time and resources. In light of this context,

Defendant has not demonstrated that adding Dr. Sanchez, even after the fact discovery deadline, is unduly prejudicial.

The Court recognizes that Dr. Sanchez, as a new party to the litigation, will be entitled to conduct discovery, which may affect the trial date. But the scope of his anticipated discovery is speculative at this point. It may be extensive, but it may not be. Thus, adding a new party who may or may not wish to conduct extensive discovery, which may or may not affect the trial date, does not weigh against allowing Plaintiffs to amend. Further, the Court notes that Plaintiffs seek to add a claim which is related to the claim against defendant. The related claim adds a malpractice claim against Dr. Sanchez for his conduct in the operating room, to the existing malpractice claim for Dr. Ikedilo's actions in the operating room. The related claims, both requiring expert-intensive testimony, warrant trying defendants together, rather than in different cases.

### D. Plaintiffs' Motion to Extend the Discovery Deadline

Finally, Plaintiffs requests that, in the event the Court grants leave to amend, they be allowed to extend the non-expert discovery deadline in order to take Dr. Sanchez's deposition. As addressed above, Rule 16 governs modification of a case schedule, and states that "[a] schedule should not be modified except upon a showing of good cause." Fed. R. Civ. P. 16(b). Given that the Court has granted Plaintiffs' motion to amend the complaint to add a new party, there is necessarily good cause to amend the scheduling order to allow Plaintiffs to take Dr. Sanchez's deposition. The Court will set a hearing to discuss the schedule.

### IV. CONCLUSION and ORDER

Based upon the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiffs' motion for leave to file a first amended complaint is GRANTED;
2. Plaintiffs shall file their first amended complaint as a separate docket entry within five days of the date of entry of this order;
3. Plaintiff shall serve Dr. Sanchez within 7 days of the filing of the first amended complaint;
4. The Court SETS a **TELEPHONIC STATUS CONFERENCE** for **October 22, 2018**, at 9:30 AM in Courtroom 8 (BAM) before Magistrate Judge Barbara A.

McAuliffe for purposes of discussing additional discovery or other appropriate deadlines that may be necessary in light of this order. One week before the hearing, the parties shall file a brief status report indicating the status of the case and discovery.

IT IS SO ORDERED.

Dated: **September 17, 2018**     /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE