# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIAME CALDERON, an individual; RC, a minor child; MC, a minor child; MC, a minor child,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; TULARE REGIONAL MEDICAL CENTER; LUIS A. SANCHEZ, D.O.,<br><br>Defendants. | Case No. 1:17-cv-0040-BAM<br><br>ORDER DENYING DEFENDANT TULARE REGIONAL MEDICAL CENTER'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 45) |

Currently before the Court is Defendant Tulare Regional Medical Center's ("Defendant" or "TRMC") motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56. (Doc. 45). Plaintiffs filed their opposition and supporting declarations on October 11, 2018. (Doc. 61). TRMC filed a reply on October 19, 2018. (Doc. 64).

On October 26, 2018, the Court held a hearing on the motion before the Honorable Barbara A. McAuliffe, United States Magistrate Judge.[1] Counsel Raymond Chandler appeared by telephone on behalf of Plaintiffs. Counsel Stacy Lucas appeared by telephone on behalf of Defendant TRMC. Counsel Jeffrey Lodge appeared in person on behalf of Defendant the United States. (Doc. 68). Counsel for Defendant Dr. Luis Sanchez did not appear. Having considered the record, the parties' briefing and arguments, and the relevant law, the Court denies Defendant's motion for summary judgment.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge for all purposes pursuant to 28 U.S.C.§ 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305. (Docs. 11, 12, 66).

1

## I. Background

This suit is a wrongful death action stemming from the death of decedent Ana Calderon ("Ana") on October 17, 2015. *See generally* First Amended Complaint ("FAC"), Doc. 55. On October 13, 2015, Ana gave birth to her third child with Plaintiff Jiame Calderon at the Tulare Regional Medical Center. FAC at ¶ 15. Adanna Ikedilo, M.D. performed the delivery. FAC at ¶ 16. There were no complications during Ana's delivery. FAC at ¶ 15. The following day, on October 14, 2015, Ana underwent a tubal ligation surgery also performed by Dr. Ikedilo. FAC at ¶ 16. According to Plaintiffs' amended complaint, shortly after Dr. Ikedilo completed the tubal ligation procedure, Ana's vital signs began to crash and her blood pressure fell. FAC at ¶ 18. Ana subsequently suffered a series of cardiac arrests before she ultimately died on October 17, 2015. FAC at ¶¶ 26, 29.

On April 4, 2016, Plaintiffs submitted a California Government Claims Act notice of intention to bring suit against TRMC, a public entity, alleging that Defendants Dr. Ikedilo and TRMC committed medical malpractice by negligently dissecting an artery during Ana's tubal ligation. Declaration of Raymond Chandler ("Chandler Decl."), (Doc. 61-4 at 4, Ex. A). On April 29, 2016, TRMC rejected Plaintiffs' administrative wrongful death claim. Statement of Undisputed Facts ("SUF"), ¶ 22 (Doc. 61-6). On July 18, 2016, Plaintiffs submitted an administrative claim with the United States Department of Health & Human Services ("DHHS") pursuant to the Federal Tort Claims Act ("FTCA"). SUF at ¶ 23. In that claim, Plaintiffs again alleged that Dr. Ikedilo and the "Tulare Community Health Clinic" committed medical malpractice on October 14, 2015, by negligently dissecting an artery during Ana Calderon's tubal ligation and thereafter, not performing a timely and proper exploratory laparotomy to repair the artery, resulting in the death of Ana Calderon. Declaration of Stacy R. Lucas ("Lucas Decl."), (Doc. 45-2, Ex. D). On December 12, 2016, DHHS denied Plaintiffs' FTCA administrative claim. SUF at ¶ 24.

On January 11, 2017, Plaintiffs filed suit in this court alleging a single wrongful death claim as a result of medical negligence. *See generally* Complaint, Doc. 1. Plaintiffs' initial complaint named both Dr. Ikedilo and TRMC as Defendants. On September 17, 2018, Plaintiffs

amended their complaint adding anesthesiologist Luis Sanchez, M.D. as a defendant. Plaintiffs' first amended complaint additionally alleged that Dr. Sanchez's conduct in providing anesthesia services during Ana's tubal ligation surgery fell below the applicable standard of care. FAC at ¶ 34, 35.

TRMC's motion for summary judgment is now before the Court for review.

**II.     Legal Standard**

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative

evidence from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

### III. Discussion

TRMC moves for summary judgment on two grounds. First, TRMC argues that Plaintiffs' wrongful death claim is time-barred under section 945.6 of the Government Claims Act. TRMC contends that Plaintiffs failed to comply with the Government Claims Act's requirement that a suit be filed no more than six months following the notice of rejection. (Doc. 45-1 at 4-6). Second, TRMC argues that it cannot be liable for Plaintiffs' medical negligence claim because TRMC medical staff met or exceeded the appropriate standard of care and anesthesiologist Dr. Sanchez is not a TRMC employee. (Doc. 45-1 at 9-17).

#### 1. Compliance with the California Government Claims Act

The California Government Claims Act (Gov. Code, § 810 et seq.), formerly known as the Tort Claims Act governs actions against public entities and public employees. Under the Government Claims Act, no person may sue a public entity or public employee for "money or

damages" unless a timely written claim has been presented to and denied by the public entity. Cal. Gov't Code § 945.4; *Curtis T. v. County of Los Angeles*, 123 Cal.App.4th 1405, 1415 (2004). A claim pertaining to a cause of action for personal injury must be filed within six months after the cause of action accrues. *Id.,* § 911.2; *Curtis T.*, 123 Cal.App.4th at 1415. With certain exceptions, an action against a public entity on a cause of action for which a claim must be presented must be commenced "not later than six months" after written notice rejecting the claim is delivered to the claimant personally or deposited in the mail. Cal. Gov't Code § 945.6. The claimant is charged with knowledge of the six-month period and is obligated to inquire as to the status of the claim if he or she has not received a written rejection notice within a reasonable time after the public entity's time to act or reject the claim has passed. *Id.*

Here, the parties agree that Plaintiffs initially presented a timely tort claim under section 945.6 to TRMC on April 4, 2016. Declaration of Stacy R. Lucas ("Lucas Decl."), (Doc. 45-1, Ex. E). TRMC sent Plaintiffs a Notice of rejection of claim dated April 29, 2016. Therefore, to continue to be timely under the Government Claims Act, Plaintiffs were required to file suit within six months or by October 29, 2016. They did not. Plaintiffs delayed filing their lawsuit until January 11, 2017—over two months after the deadline expired.

### 2. Equitable Tolling

Plaintiffs contend that their untimely suit is saved by the doctrine of equitable tolling. Specifically, Plaintiffs argue that TRMC received timely notice of their claim and during the relevant limitations period, Plaintiffs were exhausting their federal administrative remedies; a mandatory requirement because this Court has exclusive jurisdiction over Plaintiffs' action against the United States and supplemental jurisdiction over Plaintiffs' claim against TRMC. TRMC argues that equitable tolling is not available.

"Equitable tolling under California law operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.'" *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004) (*quoting Lantzy v. Centex Homes*, 31 Cal.4th 363, 2 Cal.Rptr.3d 655, 73 P.3d 517 (2003)). California "has applied equitable tolling in carefully considered situations to prevent the unjust

technical forfeiture of causes of action, where the defendant would suffer no prejudice." *Lantzy*, 31 Cal.4th at 370, 2 Cal.Rptr.3d 655, 73 P.3d 517. The purpose of California's equitable tolling doctrine "is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court." *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137 (9th Cir.2001); *Collier v. City of Pasadena*, 142 Cal.App.3d 917, 926, 191 Cal.Rptr. 681 (1983).

The leading California case on equitable tolling is *Addison v. State of California*, 21 Cal.3d 313, 146 Cal.Rptr. 224, 578 P.2d 941 (1978). In *Addison*, the California Supreme Court set out the standard that still governs equitable tolling in the state. *Id.* at 321. "The three core elements" of California's "definitive three-pronged test for invocation of" the equitable tolling doctrine, as set out in *Addison*, are "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to defendant in gathering evidence to defend against the second claim; and, (3) good faith and reasonable conduct by the plaintiff in filing the second claim." *Addison*, 21 Cal. 3d at 319. The court in *Addison* explained that the equitable tolling doctrine was necessary to reconcile "the policy underlying the statute of limitations[,]" that is to prevent the assertion of stale claims and to give defendants timely notice of their potential liability, with "the competing policy of avoiding technical and unjust forfeitures" and favoring the resolution of claims on the merits. *Id.*

The *Addison* court explicitly held that equitable tolling was available in actions against public entities. *Id.* The plaintiffs in *Addison* originally filed a tort action against the State of California and the County of Santa Clara in federal court, alleging violations of state and federal law. *Id.* at 315–16. The federal district court dismissed the federal claims and declined to exercise supplemental jurisdiction over the remaining state claims. *Id.* at 316. Plaintiffs then refiled their claims in Santa Clara County Superior Court. *Id.* However, under the California Tort Claims Act, a plaintiff must present a claim to the defendant agency within six months of the accrual of the cause of action. Cal. Gov. Code § 911.2. Upon receiving notice that the agency has denied the claim, the plaintiff then has six months to bring an action in court. *Id.* § 945.6. In *Addison*, the plaintiffs filed their federal action within six months of receiving notice,

but not their subsequent state action. *Addison*, 21 Cal. 3d at 316. The superior court thus dismissed the action, reasoning that it was barred by the statute of limitations. *Id.* In reversing the superior court, the *Addison* court reasoned that it could "discern no reason of policy which would require plaintiffs to file simultaneously two separate actions based upon the same facts in both state and federal courts since 'duplicative proceedings are surely inefficient, awkward and laborious.'" *Id.* at 319. Rather, where the three pronged test for equitable tolling is met, policy favors tolling the statutory period set out in the California Tort Claims Act during the pendency of litigation in another forum. *Id.* at 321.

Here, pursuant to the controlling California case law, the Court applies the three-pronged test outlined in *Addison.*

### A. Timely Notice of the Original Claim

The first element of equitable tolling is whether the defendant received timely notice of the original claim. *See Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137 (9th Cir. 2001) (*quoting Collier*, 142 Cal. App. 3d at 924). This filing must "alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim." *Daviton*, 241 F.3d at 1138; *Collier*, 142 Cal.App.3d at 924.

Plaintiffs satisfy the first prong because TRMC had adequate and timely notice of the claim against them. Here, Plaintiffs initially presented their state administrative charge within the statute of limitations. After filing the state administrative claim, Plaintiffs sent a formal notice of tort claim addressed to TRMC and the United States Department of Health & Human Services ("DHHS"). The letter stated that it "shall serve as notice" under both the state and federal tort claim acts of Mr. Calderon's intent to bring legal action against TRMC. Chandler Decl. (Doc. 61-4 at 1, Ex. A). That letter identified "Dr. Ikedilo and other... TRMC medical staff" as liable for the injuries to Ana Calderon. *Id.* The letter also informed Dr. Ikedilo and TRMC of the legal requirement "to preserve all documents and records." *Id.* at 4.

On April 29, 2016, TRMC sent its notice of rejection with respect to the state administrative claim. Lucas Decl. at Ex. E, (Doc. 45-2 at 512).

On July 18, 2016, during the relevant limitations period, Plaintiffs presented their federal

administrative claim to DHHS under the Federal Tort Claims Act ("FTCA"). Plaintiffs federal administrative claim again charged TRMC medical staff and Dr. Ikedilo with negligently causing the death of Ana Calderon. On December 12, 2016, Plaintiff received DHHS's rejection to further pursue Plaintiffs' federal tort claim. This notice gave Plaintiffs six months to initiate their action against the United States in federal district court. Lucas Decl. ¶ Ex. D; (Doc. 45-2 at 532). Plaintiffs timely filed their federal action a month later on January 11, 2017.

Like the defendants in *Addison*, TRMC had adequate notice of its potential liability on Plaintiffs' state tort claims, and ample time to gather evidence in their defense. 21 Cal. 3d at 318; *see also Estate of Morad v. City of Long Beach*, 2017 WL 5187826, at *6 (C.D. Cal. Apr. 28, 2017) (finding that equitable tolling under California law applied where Plaintiff's otherwise untimely state court action provided adequate notice of the potential liability against Defendant); *Appalachian Ins. Co. v. McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 40–42, 262 Cal. Rptr. 716 (1989) (holding defendants had adequate notice where plaintiff filed timely action in state court, defendants removed the action to federal court, the federal court dismissed the federal claims and declined to exercise supplemental jurisdiction over the state claims, and plaintiffs then voluntarily dismissed the action before refiling the same claims against the same defendants in state court).

### B. Prejudice to Defendant's Preparation of its Defense

The second requirement concerns prejudice to the defendant from stale claims and deteriorated evidence. This "translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him [or her] in a position to fairly defend the second." *Collier,* 142 Cal.App.3d at 925, 191 Cal.Rptr. 681.

The Court finds the second prong is satisfied because TRMC has not demonstrated that it will be prejudiced in its efforts to defend against Plaintiffs' wrongful death claim. Here, Plaintiffs' sole state law wrongful death claim alleges the same facts against the same defendants. The state tort claim seeks relief from a public entity for the wrongful acts of its agents or employee in causing Ana's death and the federal tort claim seeks relief from the United

States for the wrongful acts of its agent or employee in causing Ana's death. There is no dispute that the two claims are "at least so similar that the defendant's investigation of the first claim [would] put him in a position to fairly defend the second." *Id.* at 1276 (*quoting Collier v. City of Pasadena*, 142 Cal.App.3d at 925).

Nor have Plaintiffs delayed for so long in seeking to file their complaint that relevant evidence is likely to have disappeared, or witness' memories faded. The time-period between the expiration of the statutory deadline and Plaintiffs suit is a brief 72 days. There is nothing to suggest that the alleged claims are stale. There is also no reason to believe that memories of witnesses have faded or that evidence was lost during the two-and-a-half-month lapse of time. Additionally, during the relevant time-period, Plaintiffs were not sitting on their hands. TRMC knew that Plaintiffs were pursuing their administrative remedies, albeit in a different forum. *See Archdale v. American Internat. Specialty Lines Ins. Co*. (2007) 154 Cal.App.4th 449, 476 (2007) ("Equitable tolling has been most often applied when a plaintiff first files a claim with an administrative agency and later files a second proceeding in court after the limitations period has expired."). The short delay here and Plaintiffs' diligence during the relevant time period fails to demonstrate prejudice to TRMC by the application of equitable tolling in this case.

### C. Good Faith

With respect to the third prong, "good faith and reasonable conduct on the part of the plaintiff is less clearly defined in the cases." *Collier*, 191 Cal.Rptr. at 686. "Perhaps, if a plaintiff delayed filing the second claim until the statute on that claim had nearly run, even after crediting the tolled period, his conduct might be unreasonable." *Id.* "Or if the plaintiff deliberately misled the defendant into believing the second claim would not be filed, that action might be deemed to constitute bad faith." *Id.*

Here, the Court finds no evidence that Plaintiffs acted in bad faith or engaged in unreasonable conduct in pursuing alternative remedies and subsequently delaying the underlying complaint. As discussed above, during the relevant time period Plaintiffs were exhausting their federal administrative remedies. Plaintiffs moved quickly after receiving the rejection of their federal administrative charge to file their complaint. That process does not

appear to have been pursued for any retaliatory or calculated purpose.

Accordingly, the Court, in its discretion, concludes that application of the equitable tolling doctrine is appropriate in these circumstances. Plaintiffs' underlying suit against TRMC is thus timely and summary judgment on this ground is denied.

**3. TRMC's Liability for Medical Negligence**

Before turning to TRMC's argument regarding the standard of care, the Court will briefly explain the unique procedural posture of this case. Shortly before TRMC filed its motion for summary judgment, Plaintiffs filed a motion to amend to add anesthesiologist Dr. Sanchez as a defendant in this case because, as Plaintiffs allege, his conduct fell below the applicable standard of care; a substantial factor in causing Ana's death. Before the Court ruled on Plaintiffs' motion to amend, TRMC filed the instant motion for summary judgment.

In the moving papers, TRMC asserted that summary judgment is warranted because Plaintiffs failed to show any facts demonstrating that TRMC's treatment failed to meet the applicable medical standard of care and/or was the proximate cause of Plaintiffs' injuries. In their opposition, Plaintiffs concede that there is no evidence of negligence on the part of the non-medical staff employed by TRMC. (Doc. 61 at 5). However, Plaintiffs present expert testimony from practicing anesthesiologist, Keith Kimble, M.D. opining that Dr. Sanchez's failures proximately caused Ana's death.

In the reply, TRMC appears to abandon their argument regarding the care provided by TRMC medical staff. TRMC instead argues that it cannot be held liable for the treatment provided by Dr. Sanchez because he is an independent contractor and not a TRMC employee. For this reason, the Court only briefly addresses the standard of care and causation arguments raised in TRMC's moving papers.

**A. Medical Negligence Standard**

In California, the elements a plaintiff must prove for a negligence action based on medical malpractice are: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting

injury; and (4) actual loss or damage resulting from the professional's negligence." *Johnson v. Superior Court*, 143 Cal.App.4th 297, 305, 49 Cal.Rptr.3d 52 (2006); *Hanson v. Grode*, 76 Cal.App.4th 601, 606, 90 Cal.Rptr.2d 396 (1999) (same). "Because the standard of care in a medical malpractice case is a matter 'peculiarly within the knowledge of experts,' expert testimony is required to 'prove or disprove that the defendant performed in accordance with the standard of care' unless the negligence is obvious to a layperson." *Johnson*, 143 Cal.App.4th at 305, 49 Cal.Rptr.3d 52.

"California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases. When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." *Hanson*, 76 Cal.App.4th at p. 607, 90 Cal.Rptr.2d 396 (emphasis added).

### B. Standard of Care and Causation

TRMC contends that the standard of care administered to Ana Calderon during her tubal ligation surgery was reasonable and did not cause or contribute to her death. With respect to Ana's tubal ligation surgery and the procedures followed once Ana began to show signs of distress, TRMC's expert Scott Serden, M.D., opined that based on his medical education, training, and professional experience, as well as his review of Ms. Calderon's medical records, staff at TRMC at all times, and in all respects, met the applicable standard of care in treating Ana Calderon. Declaration of Scott Serden, M.D. ("Serden Decl."), (Doc. 45-1, Ex. E). Dr. Serden testified that during Ana's surgeries and subsequent recovery period at TRMC, Ana was appropriately monitored, and the physician orders were carried out in an appropriate way. Serden Decl. ¶ 21. Once Ana began to deteriorate, the appropriate physicians were notified, and there was a timely response. Serden Decl. ¶ 21. According to Dr. Serden, within a reasonable medical probability, nothing Defendant TRMC did or failed to do, caused Ana's injuries and/or death. Serden Decl. ¶ 22.

In contrast, Plaintiffs present the expert declaration of Dr. Kimble, a physician since 1976

Board certified in anesthesiology. Declaration of Keith J. Kimble, M.D. ("Kimble Decl."), (Doc. 61-2 ¶ 1). Dr. Kimble states that he reviewed Ana's medical records, and is of the opinion that the care provided by Dr. Sanchez and TRMC failed to meet the standard of care. Kimble Decl. ¶ 19. Specifically, Dr. Kimble states that anesthesiologist Dr. Sanchez failed to report Ana's worsening condition to Dr. Ikedilo at the appropriate times. Decl. ¶ 19. Further, Dr. Sanchez failed to "rapidly administer fluid and did not administer medications to support [Ana's] blood pressure." Kimble Decl. ¶ 19.

Based on the foregoing, a genuine issue of material fact exists with regard to whether Dr. Sanchez breached the reasonable standard of care and whether such a breach caused Ana's death. Because the standard of care and causation are disputed factual issues, the cause of action for wrongful death cannot be summarily adjudicated on this issue.

### C. Ostensible Agency

TRMC next argues that as a matter of law, it cannot be held vicariously liable for the acts of Dr. Sanchez because Jiame Calderon and the decedent Ana Calderon signed "Conditions of Admissions" forms which gave notice that Dr. Sanchez was not an employee of TRMC. (Doc. 64 at 8). Declaration of Jiame Calderon ("Calderon Decl."), (Doc. 61-7, ¶ 1).

Plaintiffs argue that Dr. Sanchez was an "ostensible" agent of TRMC. They argue that TRMC gave the impression that Dr. Sanchez was an employee because TRMC chose Dr. Sanchez as Ana's anesthesiologist. TRMC maintained complete control over the selection of Dr. Sanchez and Ana was never informed that she could or should participate in the selection process. (Doc. 61 at 18). Plaintiffs argue that signing the "Conditions of Admissions" is not dispositive. Supporting that view, Plaintiffs raise several disputes regarding whether Plaintiffs had the opportunity to read the conditions of admissions form and whether TRMC's documentation was ambiguous and/or misleading.

Under California law, a hospital is liable for a physician's malpractice when the physician is 'actually employed by or is the ostensible agent of the hospital.'" *Sampson v. Ukiah Valley Med. Ctr.*, Civ. No. 15-160 WHO, 2017 WL 2834001, at *4 (N.D. Cal. June 30, 2017) (citation omitted). "Generally, under California law, ostensible authority is for a trier of fact to

resolve and the issue should not be decided by an order granting summary judgment." *Whitlow v. Rideout Mem'l Hosp.*, 237 Cal. App. 4th 631, 639 (3d Dist. 2015) (citation omitted). Ostensible agency can be inferred "from the mere fact that the plaintiff sought treatment at the hospital without being informed that the doctors were independent contractors." *Mejia v. Cmty. Hosp. of San Bernardino*, 99 Cal. App. 4th 1448, 1457 (4th Dist. 2002).

In *Mejia,* the Court examined the application of the ostensible agency doctrine to physicians working within hospitals. The *Mejia* court explained that hospitals are generally deemed to have held themselves out as the provider of services unless they gave the patient contrary notice, and the patient is generally presumed to have looked to the hospital for care unless he or she was treated by his or her personal physician. *Mejia*, 99 Cal.App.4th 1448, 122 Cal.Rptr.2d 233 (2002). The Court held that the elements required for "ostensible agency" are: "(1) conduct by the hospital that would cause a reasonable person to believe that the physician was an agent of the hospital, and (2) reliance on that apparent agency relationship by the plaintiff. *Id.* at p. 1453, 122 Cal.Rptr.2d 233.

The first element is satisfied when a hospital holds itself out as a provider of care, which it is deemed to do unless it gives the patient contrary notice. *Id.* at 1454, 122 Cal.Rptr.2d 233. The second element of reliance is satisfied when the plaintiff looks to the hospital for services, rather than to the individual physician; moreover, reliance is generally presumed absent evidence that the plaintiff knew or should have known that the physician was not the hospital's agent. *Id.* The question of ostensible agency is generally a question for the trier of fact unless the evidence conclusively establishes that the patient knew or should have known that the treating physician was not an agent of the hospital. *Id.* at 1458, 122 Cal.Rptr.2d 233.

Here, there is no dispute that, on more than one occasion, Mr. and Mrs. Calderon signed a "Conditions of Admission" form, which stated that "all physicians and surgeons providing service to me, including the…anesthesiologist…are not employees or agents of the hospital." (Doc. 64 at 6). However, Plaintiff Jiame Calderon declares that while he initialed the Conditions of Admission form he was never shown the document, nor was it explained to him; rather, he merely initialed an electronic signature pad at 1:06 a.m. in the morning. Calderon Decl. ¶ 12.

Plaintiffs also present evidence to demonstrate that the "Authorization for and Consent to Surgery or Special Diagnostic of Therapeutic Procedures" form is misleading. (Doc. 61 at 15-16). Plaintiffs note that the document states that "procedures will be performed by the supervising physician or surgeon named above…together with associates and assistants including anesthesiologists, pathologists, and radiologists from the medical staff of Tulare District Hospital," but the same authorization form also states that the physicians are not employees of the hospital. (Doc. 61 at 16); Declaration of Raymond Chandler ("Chandler Decl."), (Doc. 61-4 at 26, Ex. C).

On summary judgment, the Court cannot choose between stronger and weaker evidence. *See Van Horn v. Hornbeak*, 2010 WL 599885, at *10 (E.D. Cal. Feb. 18, 2010). Given the language of the Authorization for and Consent to Surgery Form, the Court cannot say as a matter of law that only one conclusion can be drawn from the evidence presented. At best there is an ambiguity regarding whether the hospital documentation clearly informs patients that the anesthesiologists are not employees or agents of TRMC. Plaintiffs have raised a material genuine dispute regarding whether they knew or should have known that Dr. Sanchez was not an agent or employee of TRMC. *See Romar v. Fresno Cmty. Hosp. & Med. Ctr.*, No. Civ. F 03-6668, 2007 U.S. Dist. LEXIS 25927, 2007 WL 911882, at *12 (E.D. Cal. Mar. 23, 2007) (summary judgment denied where the Conditions of Admissions form was ambiguous regarding whether both physicians and nurse's assistants fell within the scope of the hospital's statement that "physicians providing services" were independent contractors). Summary judgment on this ground is therefore inappropriate.

**IV.    Conclusion and Order**

For the reasons stated, IT IS HEREBY ORDERED that Defendant TRMC's motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated:   **November 9, 2018**              /s/ *Barbara A. McAuliffe*
                                                                  UNITED STATES MAGISTRATE JUDGE

14